## WAIVER OF FORMAL DEFECTS IN PETITION.

Circuit Court of Cuyahoga County.

Mrs. Loren Tuttle v. Louise Furi, an Infant, by Katherine Furi, Her Next Friend.

Decided, March 16, 1908.

*Pleading and Practice—Formal Defects in Petition Waived by Answer—Action by Next Friend Constitutional—Damages in Suit by Next Friend for Injury to Infant—When Damages Erroneously Allowed Not Cured by Remittitur.*

1. Where defendant files an answer she thereby waives any formal defects in the petition such as failure to use her christian name in the caption or the proper verification of the petition.
2. Objection to the introduction of any evidence on the ground that the petition does not state a cause of action does not operate as an objection to evidence in support of an allegation in the petition which might have been eliminated from the petition by motion.
3. Sections 4998 *et seq.*, Revised Statutes, providing that actions may be brought on behalf of an infant by its next friend are constitutional even though such next friend has not been designated or appointed by the infant or the court and is not responsible financially.
4. Damages which may be recovered on behalf of an infant in an action by its next friend may not include care and medical attendance or other items for which the parent is responsible.
5. Where the court has erroneously permitted the jury to include certain items of damages in their verdict the error is not cured by a remittitur where there is nothing to show that the amount remitted was the amount which the jury may have awarded because of those items.

*O. J. Horn* and *Ralph R. Snow,* for plaintiff in error.

Henry, J.; Winch, J., and Marvin, J., concur.

By this proceeding in error, the plaintiff in error, Mrs. Tuttle, who was defendant below, seeks a reversal of the judgment for $250 recovered against her by the defendant in error, an infant suing by her next friend, as damages sustained by said infant in consequence of having been bitten July 3d, 1905, by a dog alleged to have been owned or harbored by the plaintiff in error.

The first error assigned is upon the court's denial of the motion, made by the defendant below, at the outset of the trial, to exclude all evidence offered in support of the petition, upon the grounds, first, that it does not state facts sufficient to constitute a cause of action, and secondly, that the next friend is without authority to bring the action.

Within the scope of the first ground, objections to the caption and to the verification of the petition are sought to be included. So far as such defects are merely formal, they were of course waived by the defendant below, when she answered and went to trial, without having first challenged them by motion. Her christian name undoubtedly should have been used in the caption, in place of the expression "Mrs. Loren Tuttle" but her objection to it was made too late. The verification, we think, was properly made by the next friend, rather than by the infant, according to the provisions of Section 5109, Revised Statutes, and particularly paragraph 2 thereof, the agency for that purpose and for all purposes connected with the prosecution of an infant's suit, being derived not indeed from any appointment by, or agreement with, the infant, but by virtue of the statutory provision of Sections 4998 *et seq.* But be this as it may, the objection to the verification was likewise made too late. *Kerns* v. *Roberts*, 3 West. L. M., 604; 2 O. Dec. Reprint, 537; *Simmons* v. *Brown*, Cleve. L. Rec., 33; 4 O. Dec. Rep., 29.

It is further urged, however, that the Legislature could not constitutionally authorize the practice of planting suits on behalf of infants by persons as next friends under no appointment by such infants, or by any court; neither can the plaintiff's just liability to judgment for costs in case of defeat be shifted by the Legislature from the shoulders of an infant plaintiff to those of a possibly irresponsible next friend. Reference is made to the Bill of Rights, Sections 1 *et seq.*, but we find nothing therein to support these contentions, and the practice of suing by *prochein ami* is immemorial and well approved at common law and under both the old and the new Constitutions in this state (*Hanly* v. *Levin*, 5 O., 239; *Massie* v. *Long*, 2 O., 287; *Pennsylvania* v. *Gallagher*, 40 O. S., 637). Moreover Section 4998, Revised Statutes, expressly provides that the

court may dismiss an infant's action brought by next friend, if it is not for the benefit of the infant, or it may substitute another person as next friend, or the infant's legal guardian. It is no objection to this form of procedure that neither the infant nor its next friend has authority to bind it by a contract of settlement, if such be the law. The authority to enter into an accord is not a pre-requisite to an infant's right to sue. The authority of the next friend in this case is sufficiently alleged in the petition, by the averment that "Plaintiff is an infant eleven years of age and brings this action by Katherine Furi, her next friend," it is sufficiently proved by the evidence that Katherine Furi is the infant's mother, and there is absolutely nothing in the record to rebut the presumption that the action was brought and throughout maintained for the infant's benefit.

Sufficient facts to constitute a cause of action are set forth in the petition's averments that plaintiff was, without warning to or provocation by her, bitten by a fierce and dangerous dog which the defendant owned and kept and, knowing its disposition, negligently allowed to run at large. We fail to see how the facts constituting the duty, the breach thereof, and the consequent injury to plaintiff could be stated so as to conform more nearly with the requirement of the first paragraph of Section 5057, Revised Statutes, that the petition shall contain "A statement of the facts constituting the cause of action in ordinary and concise language." The averments that the occurrence was "without warning or provocation," so far as she was concerned, is the full equivalent of the expression "without fault on her part," the absence of which from the petition is complained of.

The further criticism of the petition in connection with the motion to exclude all evidence in support thereof, becomes, of course, irrelevant upon the determination thus reached that its averments of fact suffice to constitute a cause of action. No motion, was interposed to reform the petition in respect to any alleged indefiniteness or redundancy of its allegations, and defects of that character, if any, were therefore waived.

It is claimed, however, that the objection to the introduction of any evidence under the petition operated to save all ques-

tions concerning the admissibility of evidence thereafter received. This is not true where the petition states, however, inartificially, a cause of action. In such case, specific objection must be made to each particular item of evidence adduced in support of averments which have no proper place in the petition, but which have been suffered to remain in it for want of any motion made to expunge them.

On the other hand, though timely objection be made, it is by no means true that evidence is admissible only of such facts as are specifically pleaded, or expressly put in issue. On the contrary, the evidence upon the trial of cases usually consists chiefly of testimony of other facts from which those facts may be inferred. Hence when the petition introduces its statement of facts with the qualification "at all times hereinafter mentioned," an allegation for example, of the defendant's knowledge of the vicious disposition of her dog, opens the door to proof of antecedent facts showing the mode of her acquisition of such knowledge. She had that knowledge at the times mentioned in the petition because the knowledge had been brought home to her by facts which had transpired on some former occasion. Hence the evidence of her dog having previously bitten some other child, to her knowledge, is admissible notwithstanding that it antedates the times expressly mentioned in the petition.

It is further complained that the verdict and judgment are not supported by sufficient evidence and are contrary to the weight of the evidence. The alleged conflicts in the testimony concerning the description and identity of the dog in question, as well as of divers minor matters, are not different in kind nor greatly different in extent from like discrepancies in most cases. The verdict of the jury is the means provided by law for settling disputed questions of fact and we can not say here that the solution of these questions implied in the verdict in this case is unwarranted by the evidence.

We have, however, paused somewhat on the question whether the bill of exceptions discloses sufficient testimony as to plaintiff in error's ownership of the dog to warrant the submission of the case to the jury, and more especially to warrant the re-

fusal to grant a new trial for want of sufficient evidence in that behalf to support the verdict for the plaintiff below.

At page 52, plaintiff's mother and next friend, testifies:

"When Louise got in bed I thought it was Kidd's dog, but after I found out it wasn't Kidd's dog. After we found out that wasn't Mr. Kidd's dog, we found out it was Tuttle's dog."

The trial court excluded the last phrase from the jury and the witness continued:

"After this we found out. She said that was Mrs. Tuttle's dog. I went to Mrs. Tuttle and brought her over, and she saw the circumstances the way that girl was bitten. Then Mrs. Tuttle says, 'It's not so bad after all.' "

The court withdrew from the jury the statement that it was Mrs. Tuttle's dog, and the witness again continued:

"Mrs. Tuttle told me then I need not be afraid of the dog, he's alright. He gets good care and fresh water every day."

At page 69 *et seq.*, Clarence Keehl, another child previously bitten by a dog alleged to be the same one, testifies he had seen the dog around Mrs. Tuttle's yard by the path, "right in front of her house."

At page 92, Mrs. Keehl, the mother of Clarence, testifies, that after her boy was bitten, she and her husband went to Mrs. Tuttle's house and talked with her, and her husband talked with her at the gate "and told her that there would have to be something done about the dog. She would have to kill it, and she said they wouldn't, it wasn't a bad enough bite, it had only scratched the child." She further testifies that she saw this dog at Mrs. Tuttle's house lying on her porch.

At page 132, Pearl Keehl, sister of Clarence, testifies that when she and her brother were going past Mrs. Tuttle's house a dog ran out and bit him and that she had previously seen the dog in the yard and on the porch where Mrs. Tuttle lived.

While it is by no means conclusively shown that the dog which bit the Keehl child was the same one that bit plaintiff below, there is enough here shown to make a question for the jury as to whether Mrs. Tuttle owned or harbored the dog which bit

the plaintiff and whether she had any knowledge of its vicious disposition. We think the jury were warranted, moreover, in finding as they manifestly did find upon these issues.

It is further complained that the court misdirected the jury, but upon examination of the charge we find it correct in every particular except one paragraph on page 161 of the bill as follows:

"By way of compensatory damages you may include reasonable expenses incurred for care and medical attendance made necessary by the injury; also loss of time that may have been sustained by reason of said injuries; also the pain and anguish the child may have suffered by reason of such injuries, including pain of body, anguish of mind by reason of fear, in any, and altogether such a sum as shall compensate for the injury received, and only such."

While it is true that care and medical attendance under the circumstances were necessaries, they were not such necessaries as an infant is liable for if when they were supplied the infant lived with its parents, or either of them, and at the charge of such parent or parents.

In *Swan's Treatise*, 21st Edition, p. 26, it is said:

"If the infant live with its father or guardian, and their care and protection are duly exercised, he can not bind himself for necessaries."

A kindred principle was laid down in *Toledo* v. *Duffy*, 13 O. C. C., 482 (7 O. C. D., 113), where it was held that the husband and not the wife was entitled to damages in respect of physician's charges incurred for treatment of negligent injuries to the wife, and a judgment in her favor was reversed because the court had erroneously charged the jury that they might include this element of damages in their verdict, if they found for her. See also *Mt. Adams, etc., Ry. Co.* v. *Wysong*, 8 C. C., 211 (6 C. D., 28), affirmed.

In the case before us, however, the petition alleges that an expense of $26 was incurred for medicines and medical attendance, and the transcript shows that remittitur of $25 from the original amount of the verdict was required by the trial

court, in disposing of the motion for a new trial, and the same was made accordingly by the plaintiff.

We have no means of knowing whether or not this remittitur was made because under the charge the jury might erroneously have included these items amounting to $26 in their verdict. But whether so or not, the remittitur can not cure the error in the charge in permitting the plaintiff to recover reasonable expenses incurred for "care" made necessary by the injury.

Care in the charge is distinguished from medical attendance and the only care disclosed by the record, other than that by the physician, is the care given by plaintiff's mother and next friend. For such care, as well as for medical attendance, the mother, if the head of the household, might well recover (*Omnibus Company* v. *Kuhnell*, 11 W. L. Bulletin, 189; 9 Ohio Dec., Rep., 197), and the same is true of the child's loss of time which the court said the jury might include as an element of damage sustained by it.

There was no evidence in this case of emancipation of the child's parents. We did think that perhaps the child might have suffered damage from loss of time which it would otherwise have spent in school acquiring an education, but there is nothing in the record to show that it would have gone to school during the period when it was laid up by reason of its injuries, and this period comprised the three summer months when school is generally not in session.

For error in the charge as thus pointed out and for no other error in the record, the judgment below is reversed and the cause remanded.